JOHNSON and others *vs.* QUACKENBUSH and others.

Where the complainants entered an order to produce proofs, and served it on the
agent of the defendants' solicitor, and the defendant, on the last day allowed by
the rule for that purpose, applied for and obtained an order, extending the time to
take proofs for sixty days, which order was served on the register as the agent of
the complainants' solicitor; and about forty days after the expiration of the sixty
days, allowed by this order, the defendant entered an order to close the proofs;
*Held* that such order was regular.

Although the 15th rule directs that where the service of a notice or paper is upon
an agent, or through the post office, there must be double the time of service
which would be requisite were the service upon the solicitor in person, the ser-
vice of an order which merely enlarges the time to take proofs does not come
within the provisions of the rule.

Where the object of the service of a paper or notice is to restrict the rights of the
adverse party, in case he does not act upon it within the time required by the
practice of the court, the 15th rule gives him double the ordinary time when such
service is made upon an agent, or through the post office.

*Aliter*, where the notice or paper served enlarges, instead of restricts, the time within
which the party, upon whom it is served, was previously bound to do the act required.

Under an order to produce proofs, the right to close the proofs, at the expiration of
the time limited by the practice of the court, is reciprocal in the respective parties.
And where an order, requiring the defendant to produce proofs, within forty days
after service of notice thereof, is served on the defendant's agent, neither party can
enter an order to close the proofs until after the expiration of eighty days.

Where an order extends the time for doing an act for a certain number of days,
without saying, after *service* of the order, the time for doing the act is restricted
to the number of days mentioned therein; whether the order is served person-
ally, or is served by mail, or upon the agent of the adverse solicitor.

THIS was an application, on the part of the complainants, to
open an order entered by the defendants to close the proofs in
this cause; and also for an order extending the time to produce
witnesses for forty days.   The bill was filed by the complain-
.ants to foreclose a mortgage upon 100 acres of land in Ononda-
ga county, given by G. Quackenbush to J. L. Voorhees, in Oc-
.tober 1823, and assigned by Voorhees to John Quackenbush,
the father of the mortgagor, in January, 1844.   The defendant
Lawrence claimed title to the mortgaged premises under a
mortgage given by G. Quackenbush and wife, in 1836, to J. Bar-
bero, one of the defendants, to secure the payment of a loan of
$800, and interest;   which mortgage was sold and assigned to

Johnson *v.* Quackenbush.

Lawrence on the 5th of September, 1843, and was foreclosed under the statute, and the premises bid in by the defendant Lawrence, in February, 1844. The complainants were executors and trustees of the mortgage of October, 1823, under the will of John Quackenbush, for the benefit of G. Quackenbush, the mortgagor for life, with remainder to his oldest son; with power to foreclose the same for their benefit. In December, 1843, the bill in this cause was filed, against G. Quackenbush and wife and J. Barbero, and in July, 1844, it was amended by making Lawrence, who was the assignee of the Barbero mortgage, and the owner of the premises, under the statute foreclosure, and also the tenant of Lawrence, parties to the suit. The defendant Lawrence, by his answer, admitted the giving of the mortgage of October, 1823, but he denied any knowledge of its having been acknowledged, proved, or recorded, as stated in the complainant's bill, and any information on the subject, except from statements contained in the bill. He also set up in his answer, that at the time of the execution of the mortgage to Barbero, for money lent, the mortgagor represented that the premises were free from any incumbrance thereon. He also set up as a defence that the first mortgage had been paid to J. Quackenbush, the assignee thereof, in his lifetime; or out of moneys which he had received from the estate of the brother of his deceased wife, and which moneys belonged to the mortgagor. Replications having been filed to the answers of Lawrence and of Barbero, the complainants entered an order to produce proofs, and served it on the agent of the solicitors for those defendants, on the 16th of April, 1845. The defendant Lawrence thereupon applied for and obtained the usual order for leave to examine his co-defendants, G. Quackenbush and wife and J. Barbero, as witnesses as to any matters in which they were not interested. Lists of witnesses were furnished by the parties respectively, and on the 23d of June, 1845, the complainants' solicitor proceeded to take testimony. After producing certain documentary evidence, and obtaining the admission of several facts from the other party to be noted by the examiner, they stated that they had gotten through with their evidence. And they refused to extend the time to

produce testimony; although informed by the defendant Lawrence that he had several witnesses to produce, who could not be examined within the time limited by the order. The defendant Lawrence was, therefore, compelled to apply to the court for an extension of the time; and on the last day allowed by the rules for that purpose, he succeeded in obtaining an order extending the time for sixty days. This order was entered on the 5th of July, 1845, and was immediately served upon the register, as the agent of the solicitors for the complainants. The defendant Lawrence thereupon proceeded to take his testimony. He produced and proved the execution of the bond and mortgage to Barbero, and the consideration thereof; the assignment of that bond and mortgage to himself; and the foreclosure of the same under the statute, as mentioned in his answer. He also examined Barbero as a witness, and proved by him an admission of John Quackenbush, in his lifetime, and within two or three years after the giving of the mortgage of October, 1823, and the assignment thereof from Voorhees, that such mortgage had been paid. He also attempted to examine the defendant Garret Quackenbush as a witness, but he kept out of the way, so that he could not be subpœnaed. About forty days after the expiration of the sixty days allowed by the order of the 5th of July, 1845, to produce proofs, Lawrence entered an order to close the proofs in the cause. The principal object of the application on the part of the complainants was to enable them to produce testimony to impeach Barbero as a witness. And the solicitors swore they believed that by the practice of the court, the complainants were entitled to one hundred and twenty days, after the 5th of July, 1845, to produce witnesses; because the order of that date, extending the time, was served on their agent, and not upon themselves personally.

*N. Hill Jun.*, for the complainants.

*J. Rhoades*, for the defendant Lawrence.

Johnson *v.* Quackenbush.

THE CHANCELLOR. The entry of the order to close the proofs in this case, after the expiration of the sixty days to which the time to take proofs was extended by the order of the 5th of July, 1845, was regular; and was, I believe, in accordance with the general understanding and practice of the profession in such cases. It is true, the 15th rule of this court declares that where the service of a notice or paper is upon an agent, or through the post office, there must be double the time of service which would be requisite if the service was upon the solicitor in person. But the service of an order which merely enlarges the time to produce proofs in a cause, does not come within the provisions of this rule. Where the object of the service of a paper or notice is to restrict the rights of the adverse party, if he does not act upon it within the time required by the practice of the court after such service, the 15th rule gives him double the ordinary time, if the service is made upon his agent, or through the medium of the post office. For the legal presumption, in such a case, is, that the delay in obtaining actual notice of the service of the paper or notice will render more time necessary to do the act required, than if such paper or notice had been served upon the solicitor himself. But no such presumption can arise in a case where the notice or paper served enlarges, instead of restricts, the time within which the party, upon whom it is served, was previously bound to do the act required. Here, the original order to produce proofs required the defendants to produce the same within forty days after service of notice of the order. And as the service of the order restricted their right, which was before unlimited, and as that service was upon the agent, the defendants had double the time, or twice forty days, after the service of that order, to produce testimony; before an order could be entered to close the proofs. The right to enter an order to close the proofs being reciprocal, under the provisions of the 68th rule, neither party could enter the order, upon such a service, until after the expiration of the eighty days. (*James* v. *Berry,* 1 *Paige's Rep.* 647.) The order of the 5th of July, however, did not require either party to produce witnesses within a specified time after *service* of that order. But it merely extended the time, which

was previously restricted to the 5th of July, sixty days from that time; and whether the order was served personally, or upon the agent of the complainant's solicitors, the time of such extension was limited to the sixty days allowed by the order of the court. For, the rights of the parties to enter an order to close the proofs being reciprocal, if the practice contended for by the complainants in this case is sanctioned by the court, a solicitor who obtains an order, from the court, extending the time to produce witnesses for a certain number of days, can always obtain double that time, when he resides in a different city or town from the adverse party, by merely serving his order through the medium of the post office.

The solicitors of the complainants have, in this case, however, undoubtedly mistaken the practice; and I should be disposed to open the order to close the proofs generally, if there was any reason to believe it would be conducive to the ends of justice. The defendant Lawrence does not, in his answer, state that he was aware of the existence of the mortgage of October, 1823, at the time of the assignment from Barbero. But he states that, previous to such assignment, G. Quackenbush told him the premises were free from incumbrances. His rights, however, do not depend upon that question, but upon the question whether Barbero was a bona fide mortgagee, without notice of the existence of a prior mortgage which was a valid and subsisting incumbrance upon the premises. For if that mortgage was not legally proved, or acknowledged, so as to entitle it to be recorded, the bare fact of its being upon the record was not constructive notice to any one. And, if Barbero states truly, that John Quackenbush informed him that the mortgage had been paid, Lawrence, as the assignee of Barbero, is entitled to protection, as a bona fide purchaser under him; even if Lawrence had learned, previous to the assignment, that the complainants claimed there was such a mortgage as they are now attempting to foreclose, and that it was still unpaid.

The documents which the complainants propose to offer in evidence, are not such papers as could be acknowledged, and read in evidence without proof of their execution, at the time

Johnson v. Quackenbush.

they purport to have been acknowledged. And the names of the subscribing witnesses to the release of John Quackenbush, are not in the list of witnesses whom the complainants have a right to examine. Indeed, the instruments themselves, if fully proved, would be wholly immaterial. For if Alida Quackenbush survived her brother, so as to give her any interest whatever in his estate under his will, that interest must be considered, in equity, as converted into personalty at the death of the testator. (*Hutchinson* v. *Mannington*, 1 *Ves. jun.* 366.) And the proceeds would therefore belong to the husband of the legatee, upon her death, as a part of her personal estate; and not to her children as real estate. (*Ashby* v. *Palmer*, 1 *Meriv.* 296. *Doughty* v. *Bull*, 2 *P. Wms.* 230. *Bartholomew* v. *Meredith*, 1 *Vern.* 176. *Maberly* v. *Strode*, 3 *Ves. jun.* 450.) It may, however, be material in this case, to show that Alida Quackenbush survived her brother, and did not die in his lifetime, as supposed by one of the defendant's witnesses. For if she died first, her children, and not her husband, would be entitled to a portion of her lapsed share of the estate of the testator; as property undisposed of by the will. And the share of Garrett Quackenbush in that property, which was received by his father from the executors, would be properly applicable to the payment of the mortgage held by the father. The complainant must therefore be permitted to examine any witnesses named in their original list, to prove the time of her death; unless the defendant's counsel shall, within twenty days, stipulate to admit the fact, upon the hearing of this cause, that she died after the death of her brother, the testator. If that fact is not admitted, the order to close the proofs must be so far opened as to permit either party, within sixty days after the entering of the order upon this decision, to examine witnesses to that point only. But if it is admitted, then the order is not to be opened for any other purpose than to examine witnesses as to the general character of J. Barbero, as to truth and veracity. Upon that point there is a conflict of testimony on this motion, though the weight of evidence is clearly in favor of his veracity. On a question of so much importance in this cause, however, I cannot deny the

complainants the right to impeach him, if he is, in fact, not to be credited. The order to close the proofs must, therefore, be so far opened as to permit either party, within sixty days after the entry of the order hereon, to examine witnesses as to that point; and then the proofs are to be considered as closed without the entry of any further order. The complainants, however, must, in any event, pay to the solicitors of the defendants Lawrence and Barbero, their costs of opposing this motion, to be taxed; and within twenty days after service of a copy of the taxed bill, and a demand of such costs.